UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Tashika M. on behalf of,<br>K.S.M., (a minor)[1],<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | CASE NO. 3:18-CV-1038-MGG |

**OPINION AND ORDER**

Plaintiff, Tashika M. ("Ms. M."), on behalf of her minor daughter, K.S.M, seeks judicial review of the Social Security Commissioner's decision to uphold an August 26, 2015 determination that K.S.M. was no longer disabled as of August 2015. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner.

**I.**     **OVERVIEW OF THE CASE**

K.S.M., born in 2006, was found to be disabled on December 13, 2011, in the comparison point decision ("CPD"). At the time of the CPD, K.S.M. suffered from pervasive development disorder, autism, and language delay, which were found to meet Listing 112.05(D). On August 26, 2015, she was found to be no longer disabled as

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

of August 2015 due to improvement. K.S.M. challenged this determination, and a hearing was held on January 3, 2018, where K.S.M. appeared with her mother. K.S.M. was not represented by counsel at the hearing. In August 2015, K.S.M. was school aged (designated as a child age 6 to the attainment of age 12).

On April 13, 2018, an administrative law judge ("ALJ") found K.S.M. not to be disabled as defined by the Social Security Act ("Act") and denied her requested benefits. On October 29, 2018, the Appeals Council denied K.S.M.'s timely request for review, making the ALJ's April 2018 decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Now ripe[2] before this Court is K.S.M.'s complaint for judicial review of the Commissioner's unfavorable decision under 42 U.S.C. § 405(g).

## II.    DISABILITY STANDARD

An individual under the age of eighteen (a "child") will only be found disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). In order to establish disability, a child must show that (1) she is not engaged in performing substantial gainful activity; (2) she has a severe medically determinable impairment: and (3) her impairments meet, medically equal, or functionally equal a Listing. 20 C.F.R. § 416.924(a)-(d). In order to evaluate

---

[2] Plaintiff's complaint became ripe on September 12, 2019, without any reply brief being filed. *See* N.D. Ind. L.R. 7-3(d).

whether a child functionally equals a Listing, the ALJ must evaluate how the child functions in six areas: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). "To find an impairment functionally equivalent to a listing, an ALJ must ... find an 'extreme' limitation in one category or a 'marked' limitation in two categories." Brindisi v. Barnhart, 315 F.3d 783, 785 (7th Cir. 2003) (citing 20 C.F.R. § 416.926a(a)).

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.

2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

4

## IV. ANALYSIS

Ms. M. argues that the ALJ erred in the analysis of two of the function areas. Specifically, Ms. M. argues that the ALJ erred in the analysis of "acquiring and using information" and "attending and completing tasks."

The ALJ found that since August 2015, K.S.M. has had less than marked limitation in acquiring and using information. [DE 10 at 14]. The ALJ noted that although she requires accommodations in school, her IEP indicated she was reading better and was "generally doing better in school." [DE 10 at 15]. K.S.M.'s IEP reports noted improvement over time, and at her most recent IEP, she was reading at grade level and answering comprehension questions with 80 percent accuracy. [DE 10 at 15].

"Acquiring and using information refers to how well a child acquires or learns information and how well [she] uses the information [she] has learned." Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 699 (7th Cir. 2009)(citing C.F.R. § 416.926a(g)). A school-age child should be able to read, write, do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). She should be able to use those skills in academic situations to demonstrate what she has learned, such as produce oral and written projects, solve math problems, and take tests. *Id.*

Ms. M. asserts that the ALJ failed to discuss relevant medical information in the analysis of acquiring and using information, and that the two sentences of analysis are insufficient to properly build a logical bridge from the evidence to the end decision. The ALJ relied on the opinions of the state agency doctors, who opined that K.S.M had marked limitations in her ability to acquire and use information due to language

5

deficiencies. However, the ALJ noted that the hearing level record indicated improvement in language, and therefore he found that K.S.M had less than marked limitations in her ability to acquire and use information. [DE 10 at 24]. The ALJ also gave significant weight to K.S.M.'s third grade teacher, who completed a questionnaire in January 2016. She opined that K.S.M. had slight problems in acquiring and using information, particularly in math. [DE 10 at 24]. She also noted that K.S.M. was "very independent" and had only a slight difficulty in reading, understanding, and following oral instructions. [DE 10 at 25].

The ALJ stated that although K.S.M. continues to have language impairments and a specific learning disability, her IEPs show improvement. [DE 10 at 25]. Specifically, at her fourth grade IEP, she was reading at grade level and answered comprehension questions with 80 percent accuracy. [DE 10 at 25]. The Court finds that the ALJ did not err in the analysis of acquiring and using information.

Ms. M further asserts that the ALJ erred in failing to take K.S.M.'s third grade teacher's evaluation fully into consideration. While the ALJ does not discuss every piece of information from either the third grade teacher or other professionals, the ALJ adequately analyzes K.S.M.'s improvement. Although Ms. M. accuses the ALJ of failing to consider every portion of the third grade teacher' assessment, she cites to later IEP notes and not the assessment. In the assessment, the teacher opined that K.S.M. has only a "slight problem" in acquiring and using information, which is consistent with the ALJ's decision. [DE 10 at 357]. Regardless, the later IEP first noted that K.S.M. was reading at grade level and could answer questions and draw conclusions with 80

percent accuracy. This, too, is consistent with the ALJ's decision. The assessment then noted that K.S.M. "is not reading independently at home or school." [DE 10 at 395]. Ms. M. asserts that this implies K.S.M. is incapable of reading independently. The next sentence states that K.S.M. "will need to gain the ability and willingness to complete her reading assignments." This sentence does not imply that K.S.M. is incapable of independent reading. Rather, combined with the statement that K.S.M. is reading at grade level, it is unfair to assume that K.S.M. is incapable of independent reading to the point of requiring marked limitations in acquiring and using information. There is nothing in the medical evidence to support Ms. M.'s assertion that K.S.M. is incapable of independent reading to the point of requiring marked limitations in acquiring and using information. On the contrary, the medical evidence shows that K.S.M. reads at grade level with 80 percent reading comprehension. The ALJ properly explained his reasoning behind finding K.S.M. to have less than marked limitations in acquiring and using information. He did not err in analyzing K.S.M.'s teacher's opinion or in analyzing the IEP notes.

Ms. M. argues that K.S.M.'s teacher noted that although K.S.M. is reading at grade level, she still requires testing accommodations and does not read independently at home or school. Ms. M. argues that this statement implies that she requires help or redirection while reading. However, the ALJ properly discusses K.S.M.'s need for accommodations and found that her accommodations do not hinder her ability to acquire and use information beyond the limitations noted. Ms. M. does not provide any citations or case law to back up her opinion that the need for school accommodations

7

cancels out any improvement. The ALJ explained his reasoning, and Ms. M. does not provide any rationale to contradict that reasoning.

Ms. M. also asserts that the ALJ only discussed the less than marked limitations in acquiring and using information in two sentences, but this is not accurate either. The ALJ discusses K.S.M.'s limitations in multiple areas in the decision, including in weighing medical opinions. The ALJ provided a full analysis and built the required logical bridge between the evidence and his conclusion.

Finally, Ms. M. argues that the ALJ erred in analyzing K.S.M.'s limitations in attending and completing tasks. The ALJ found that K.S.M. has had less than marked limitation in attending and completing tasks since August 2015. [DE 10 at 16]. Attending and completing tasks considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). Attention involves regulating levels of alertness and initiating and maintaining concentration; the ability to filter out distractions and focus on an activity or task at a consistent level of performance; focusing long enough to initiate and complete an activity or task, and changing focus once it is completed; and if you lose or change focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it. 20 C.F.R. § 416.926a(h)(1)(i). Examples of limited functioning in attending and completing tasks includes: being easily startled, distracted, or overreactive; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily

8

frustrated and giving up on tasks; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

In determining that K.S.M. has less than marked limitations in attending and completing tasks, the ALJ noted that K.S.M. struggled to complete and turn in homework. [DE 10 at 16]. However, the ALJ noted that she put forth "maximum effort" in small group activities. [DE 10 at 16, 25]. The ALJ also looked to K.S.M.'s third grade teacher's assessment, which stated that K.S.M. was "very independent" and has had "no problems attending and completing tasks." [DE 10 at 16].

Ms. M. asserts that the ALJ misconstrued evidence regarding K.S.M.'s ability to attend and complete tasks. She further argues that the ALJ simply did not offer enough explanation to build a logical bridge from the evidence to the conclusion. The ALJ acknowledged that K.S.M. had some difficulties in attending and completing tasks, noting that she sometimes showed a short attention span and required extra time to complete tasks at school and at home. [DE 10 at 21-22]. The ALJ also noted that K.S.M. required reminders to complete tasks and did not always complete her homework. [DE 10 at 16, 21]. However, the ALJ also gave significant weight to the state agency physicians, who both opined that K.S.M. had less than marked limitations in attending and completing tasks. [DE 10 at 24]. The ALJ also gave K.S.M.'s third grade teacher significant weight, and she noted that K.S.M. had no problems in attending and completing tasks. [DE 10 at 24-25]. This evidence supports K.S.M.'s need for some help with attending and completing tasks, but also supports the ALJ's finding that those limitations are less than marked. The ALJ properly relied on medical opinion evidence

and record evidence to support his findings that K.S.M. had less than marked limitations in attending and completing tasks.

The ALJ also relied on an IEP report which stated K.S.M. gave maximum effort in small group work. Ms. M. argues that the ALJ took the phrase "maximum effort" out of context. She asserts that maximum effort is not the same as an ability to attend and complete tasks. However, the IEP report notes that although K.S.M. worked at a slower pace than her peers, it does not note any difficulties with attending and completing tasks. [DE 10 at 394]. Ms. M. does not point to any ways in which the phrase "maximum effort" was taken out of context or alters the decision, as the IEP ultimately does not discuss difficulties with attending and completing tasks. Moreover, the ALJ properly relied on opinion evidence in finding that K.S.M. has less than marked limitations in attending and completing tasks. The ALJ properly discussed K.S.M.'s limitations and built a logical bridge from the evidence to his decision.

**V.     CONCLUSION**

For the reasons stated above, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 28th day of February 2020.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge